```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                               :
ZUBEARU BETTIS,                                                :
                                                               :
                Plaintiff,                                     :    OPINION & ORDER
                                                               :    21 Civ. 7505 (GWG)
        -v.-                                                   :
                                                               :
LIEUTENANT ROBERTO GRIJALVA, et al.,                           :
                                                               :
                Defendants.                                    :
                                                               :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Zubearu Bettis has brought suit against Lieutenant Roberto Grijalva, Jermaine Darden, Warden Marti Licon-Vitale, Cody Kizzier, Yoon Kang, and Angelo Jordan, all current or former employees of the Bureau of Prisons, for violations of his federal constitutional rights. See Complaint, filed Sept. 8, 2021 (Docket # 2) ("Comp."); Letter, filed Feb. 7, 2022 (Docket # 23) ("Valentin Letter"). Defendants have moved to dismiss this case or, in the alternative, for a grant of summary judgment.[1]

I.   BACKGROUND

   A.   Allegations from the Complaint

At the time of the filing of his complaint, Bettis was in federal custody in Valhalla, New York, awaiting a sentence following conviction. See Comp. at 2.[2] Bettis alleges that on

---

[1] See Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment, filed Sept. 23, 2022 (Docket # 42) ("Mot."); Memorandum of Law, filed Sept. 23, 2022 (Docket # 43) ("Mem."); Declaration of Michael Cardew, filed Sept. 23, 2022 (Docket # 44) (Cardew Decl."); Rule 56.1 Statement, filed Sept. 23, 2022 (Docket # 45); Reply to Def. Motion to Dismiss and Summary Judgment, filed Apr. 3, 2023 (Docket # 57) ("Opp."); Reply Memorandum, filed May 12, 2023 (Docket # 62).

[2] "Comp. at ___" refers to the pagination assigned by the ECF system. Due to the presence of blank pages in the complaint, the ECF pagination does not always align with the pagination used on some pages of the complaint.

December 18, 2019 and during the time of the acts alleged in his complaint, he was confined in the Metropolitan Correction Center ("MCC") in New York City. Id. at 5. On that date, Grijalva took Bettis out of Bettis' cell "on the pretense of removing a soiled mattress." Id. While Bettis was handcuffed, Grijalva grabbed Bettis "around [his] arms" "and slammed [him] to the ground[,] doing damage to [his] right knee and [his] testicles." Id.

After this attack, Kang, identified as a "physician assistant" or "PA" at the MCC, see id. at 4, would make "medical rounds," id. at 5. Bettis would tell Kang when she made these medical rounds that Grijalva had assaulted him and that as a result he "had blood in [his] urine and [his] testicles [were] swollen," but "Kang did not reply." Id. at 5. Bettis also told Darden, identified as a captain at MCC, see id. at 3, that Grijalva assaulted him, id. at 5. Bettis identified Kizzier also as a captain, see id. at 3, and he "wrote a complaint that was given to Kizzier that [he] was slammed and injured by CO Grijalva and being refused medical treatment," id. at 5. Kizzier ignored this complaint. Id. at 6. Bettis also told Warden Licon-Vitale "what Grijalva did," and she responded, "I know[.] I promoted him." Id. at 6.

Bettis also alleges that "at the time [he] had [a] medical permit to wear sneakers and to be cuffed in front. Capt[.] Darden and C.O. Grijalva told PA Kang to remove [his] permits[,] and she did do it." Id. at 5. Bettis alleges that on December 26, 2019, he "had to set fire to [himself] in [his] cell" in order to get taken to receive medical care. Id. Kang told a lieutenant that Grijalva had told her that Bettis "could not be seen by her about [his] injuries because [he] was 'disruptive.'" Id. At this point, even though she knew that he had spent a week with swollen testicles, Kang refused to send Bettis to the emergency room and told him that he had an infection, which she did "to cover up the assault by Grijalva." Id.

After a month, Bettis was "sent for a sonogram." Id. at 6. During that month, Bettis had been "left in pain while everyone 'covered up'" Grijalva injuring him. Id. Grijalva wrote up a "charge" of misdemeanor assault against Bettis, and Jordan, identified as a disciplinary hearing officer and captain, see id. at 4, watched a video of the incident and concluded that Bettis "assaulted the officer," id. at 6. Outside of the sonogram, Bettis states that he "was not medically treated." Id. He also alleges that:

> I [suffered] a tear in my knee ligament, urinating blood, swollen testicles, I was given an antibiotic that almost killed me (tightened my throat)[.] I was left to suffer. I was given a hernia belt to keep my testes in place. To this day my scrotum is painful to touch when washing[.] I have to lift my scrotum to sit down.

Id. at 6.

Four days after Bettis had his exchange with Licon-Vitale, Bettis was transferred to "WCDOC Valhalla." Id.

B. Procedural Background

Bettis filed this suit on September 8, 2021. See Comp. He seeks $200 million in damages and the firing of Licon-Vitale, Grijalva, Darden, Kang, Jordan, and Kizzier. Id. at 6; see also Valentin Letter (identifying individual defendants). Defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment on September 23, 2022. See Mot. Defendants also served Bettis with the required notice regarding the procedures for opposing a motion for summary judgment. See Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment, filed Sept. 23, 2022 (Docket # 46). In support of their arguments for summary judgment, the defendants provided information pertaining to the Bureau of Prisons' administrative remedy process. See Cardew Decl. Bettis opposed the motion in a letter offering his own factual recounting of his attempts to engage administrative remedy process, see Opp. at 1-4, and requested that the Court allow him to amend his complaint to cure "other deficiencies"

raised by defendants, see id. at 4. Bettis did not otherwise address the defendants' arguments for dismissal.

## II.     LEGAL STANDARD

### A. Motion to Dismiss

A party may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) where the opposing party's pleading "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While a court must accept as true all of the allegations contained in a complaint, that principle does not apply to legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation, internal quotation marks, and brackets omitted). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal, 556 U.S. at 678, and thus a court's first task is to disregard any conclusory statements in a complaint, id. at 679.

Next, a court must determine if a complaint contains "sufficient factual matter" which, if accepted as true, states a claim that is "plausible on its face." Id. at 678 (citation and internal quotation marks omitted); accord Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) ("[A] complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more

than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" but not "'show[n]' — 'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

    B.  Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-159 (1970)); accord Morales v. Quintel Ent., Inc., 249 F.3d 115, 121 (2d Cir. 2001) ("[A]ll reasonable inferences must be drawn against the party whose motion is under consideration.").

Once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a

verdict in his favor." Anderson, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (punctuation omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." FDIC v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

    C. Pro Se Litigants

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted); accord McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999) (A pro se party's pleadings should be construed liberally and interpreted "to raise the strongest arguments that they suggest[.]") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994)). "However, that a party proceeds pro se 'does not exempt [the] party from compliance with relevant rules of procedural and substantive law.'" DeLeon v. Dunaway, 2022 WL 3902734, at *1 (S.D.N.Y. Aug. 30, 2022) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

III.     DISCUSSION

Defendants argue that Bettis' complaint must be dismissed because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e).  See Mem. at 5-8.  Defendants also argue that even if he had exhausted his administrative remedies, he has not stated a claim that has been recognized under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and its progeny. See id. at 8-13.  Bettis counters that he did in fact exhaust all administrative remedies available to him, see Opp. at 1-4, and he asks the Court to allow him to amend the complaint "to cure those other deficiencies" defendants have raised, see id. at 4.  We need not reach the issue of exhaustion because Bettis has failed to articulate a viable claim under Bivens.

In 1871, Congress created a cause of action, later codified as 42 U.S.C. § 1983, under which a person whose constitutional rights are violated by a state actor may sue for money damages.  See Ziglar v. Abbasi, 582 U.S. 120, 130 (2017).  There is no parallel statutory remedy for violations of constitutional rights committed by federal officials.  Id.  In Bivens, however, the United States Supreme Court recognized an implied cause of action for one such violation, "holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim."  Hernandez v. Mesa, 140 S. Ct. 735, 741 (2020).  In subsequent decisions, the Supreme Court extended Bivens to two additional constitutional claims: a congressional staffer's Fifth Amendment claim that she was fired because of her sex, see Davis v. Passman, 442 U.S. 228 (1979), and a federal prisoner's Eighth Amendment claim that he was denied adequate medical treatment for his asthma, ultimately leading to his death, see Carlson v. Green, 446 U.S. 14 (1980).

Over time, the Supreme Court has grown more reluctant to acknowledge implied causes of action, and "the Court has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." Ziglar, 582 U.S. at 135 (quoting Iqbal, 556 U.S. at 675); accord Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001) ("Since Carlson we have consistently refused to extend Bivens liability to any new context or new category of defendants."). Before entertaining a Bivens claim, courts must apply a two-part test. First, a court must determine whether the case "is different in a meaningful way from previous Bivens cases decided by" the Supreme Court. Ziglar, 582 U.S. at 139. A case may be distinguishable from previous Bivens cases in a variety of ways, including through differences in:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Id. at 140.

Second, if a case presents a new context that differs from the Supreme Court's decisions in Bivens, Davis, and Carlson, a court should consider whether there are "special factors counseling hesitation" in recognizing a novel Bivens claim. Id. at 136. This "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. Another relevant consideration is whether "Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" Id. at 137 (alterations in original) (quoting Wilkie v. Robbins, 551 U.S. 537, 550 (2007)). In general, courts must be mindful that "the Supreme Court has warned that the Bivens

remedy is an extraordinary thing that should rarely if ever be applied in new contexts." Arar v. Ashcroft, 585 F.3d 559, 571 (2d Cir. 2009) (punctuation omitted).  Indeed, the Supreme Court held more recently that "[i]f there is even a single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy." Egbert v. Boule, 142 S. Ct. 1793, 1803 (2022) (refusing to recognize Bivens remedy for Fourth Amendment excessive force violation or First Amendment retaliation claim) (citation and punctuation omitted).

    A.  Excessive Force

We construe the complaint as seeking a claim for use of excessive force by Grijalva.  See Comp. at 5.  Because it is unclear whether at the time of the alleged assault Bettis was a pre-trial detainee or an incarcerated prisoner, this claim for use of excessive force might arise under the Fifth or Eighth Amendments.  See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979) (Fifth Amendment's Due Process Clause applies to treatment of pre-trial detainees, and the Eighth Amendment applies to treatment of a sentenced inmate); Ortiz v. Pearson, 88 F. Supp. 2d 151, 160 (S.D.N.Y. 2000) (A federal pre-trial detainee's "excessive force claim arises under the Due Process Clause of the Fifth Amendment rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment.").

Under either provision, this claim is meaningfully different from the three implied causes of action recognized by the Supreme Court in Bivens, Davis, and Carlson.  See Schulte v. Bureau of Prisons, 2022 WL 1468017, at *6 (S.D.N.Y. May 10, 2022) ("[F]ollowing Ziglar, courts regularly hold that a detainee's Fifth Amendment claim of excessive force by prison officials involves a new Bivens context.") (collecting cases); Ojo v. United States, 2019 WL 3852391, at *13 (E.D.N.Y. Aug. 15, 2019) (an Eighth Amendment excessive force claim presents a new Bivens context), adopted, 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019); Edwards v. Gizzi, 2022

WL 309393, at *6 (S.D.N.Y. Feb. 2, 2022) ("Courts have consistently found that excessive force cases arising under either the Fifth or Eighth Amendment to present new Bivens contexts.").

A range of special factors exist prevent recognition here of a new Bivens remedy. As we have explained in the prison context:

> Courts have often noted the undesirability of excessive judicial intervention into prison administration, as "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions." Bell, 441 U.S. at 547 . . . . Allowing individual claims for money damages against prison staff would stray from the Supreme Court's guidance that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." [Id.]; see also Turkmen v. Ashcroft, 2018 WL 4026734, at *9 (E.D.N.Y. Aug. 13, 2018) (potential interference with BOP internal policies constituted a special factor weighing against a Bivens remedy), adopted, 2021 WL 4099495 (E.D.N.Y. Sept. 9, 2021) . . . . Consideration of this risk of interference in government functioning was expressly encouraged by Ziglar, which explained that "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." 137 S. Ct. at 1858. Second, separation of powers considerations similarly weigh against a Bivens remedy, as "the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." Bell, 441 U.S. at 548[;] . . . Pinson v. U.S. Dep't of Justice, 514 F. Supp. 3d 232, 243 (D.D.C. 2021) (finding that other branches were better suited to address the "sensitive area" of prison administration); Abdo v. Balsick, 2019 WL 6726230, at *8 (D. Colo. Dec. 11, 2019) (same).

Schulte, 2022 WL 1468017, at *4.

And although the Supreme Court in Carlson indicated that Congress' enactment of the Federal Tort Claims Act ("FTCA") did not counsel against the extension of a Bivens remedy, see 446 U.S. 14, 19-20, "courts in this Circuit have noted that Carlson's analysis of that issue may not have survived Ziglar." Oliveras v. Basile, 440 F. Supp. 3d 365, 373 (S.D.N.Y. 2020). The Court found in the latter case that "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Ziglar, 582 U.S. at 137. Indeed more recently, the Supreme Court recognized the passage of the

Westfall Act amendments to the FTCA as an additional factor that counseled against extending Bivens. See Hernandez, 140 S. Ct. at 748-49. Additionally, the Supreme Court has recognized that special factors against the extension of a Bivens remedy include the existence of BOP's Administrative Remedy Program, see Corr. Servs. Corp., 534 U.S. at 74, and the passage of the PLRA after the Court's decision in Carlson, see Ziglar, 582 U.S. at 148.

Given these factors, including the availability of the FTCA as source of damages for the conduct complained of, we decline to recognize a Bivens claim for the use of excessive force by prison officials. Schulte, 2022 WL 1468017, at *5-*7.

B. Deliberate Indifference

We also construe the complaint as alleging deliberate indifference based on the denial of medical care for Bettis by Kang and other officials. See Comp. at 5-6. Due to the ambiguity as to Bettis' carceral status at the time of the allegations, this claim might invoke either the Fifth or Eighth Amendment for the reasons stated above. See also Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000) (claim of deliberate indifference to a serious medical need by a federal pre-trial detainee "arise[s] under the Due Process Clause of the Fifth Amendment instead" of the Eighth Amendment).

Bettis' claim that Kang refused for some period to examine or treat his injuries obviously has no connection to the claims in Bivens and Davis. See Ziglar, 582 U.S. at 140 (describing the context of the Supreme Court's three Bivens cases). Bettis' claim of deliberate indifference shares similarities, however, with the claim in Carlson inasmuch as both Carlson and this case involve claims of deliberate indifference based on denial of medical care. But similarity alone can no longer establish an implied cause of action given that the Supreme Court has warned courts about declining to recognize "even a modest extension" of Bivens. See Ziglar, 582 U.S. at

147.  Here there are "meaningful" differences between Bettis' deliberate indifference claim and the claim made in Carlson.  Carlson involved a claim over the failure by prison officials to provide medical care for an asthmatic prisoner that resulted in that person's death.  Carlson, 446 U.S. at 16 n.1.  Bettis alleges that he was ignored while his injuries left him with blood in his urine and swollen testicles, see Comp. at 5, that he did not receive medical attention until having a sonogram a month after Grijalva's assault, see id. at 6, and that he eventually received antibiotics and a hernia belt, see id.

Courts have routinely found variances in circumstances and severity render deliberate indifference claims different from Carlson and thus arise in a "new context."  See, e.g., Fernandini v. United States, 2019 WL 2493758, at *1, 10 (S.D.N.Y. Feb. 14, 2019) (identifying a new context where plaintiff was denied medical care following an infection from a rat bite and "pinching pain" in his heart because plaintiff had not identified "serious injuries leading to death"), adopted in part, rejected on other grounds, 2019 WL 1033797 (S.D.N.Y. Mar. 5, 2019); Edwards, 2022 WL 309393, at *7 (deliberate indifference over leaving an imprisoned person with an untreated broken arm is a "new context" because being left with a broken arm and "in extreme pain" is "clearly and meaningfully different from a failure to provide life-saving medical care to an inmate with asthma"); Caraballo v. Pliler, 2023 WL 3467185, at *8 (S.D.N.Y. May 15, 2023) (distinguishing Carlson from a case where a plaintiff alleged lack of treatment for symptomatic COVID-19 because in Carlson "medical personnel failed to provide any treatment for a life-threatening condition" and in this case, plaintiff did not allege the deliberate indifference to his care resulted in "serious injury or harm"); Locke v. Root, 2023 WL 2914184, at *6 (D. Kan. Apr. 12, 2023) (a prison nurse ignoring repeated requests from plaintiff for medical attention after injuries sustained and ongoing pain caused by assault "meaningfully

differ[s]" from the deliberate indifference that caused death in Carlson); Washington v. Fed. Bureau of Prisons, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022) (new context presented where plaintiff's claims "do not involve a medical emergency, as did Carlson, but rather focus on a long term and ongoing course of medical treatment of Plaintiff's chronic, non-fatal condition"); Cross v. Buschman, 2022 WL 6250647, at *3 (M.D. Pa. Oct. 7, 2022) (failure to provide diabetes treatment for 13 months is "notably different from Carlson" because although plaintiff alleges defendants were deliberately indifferent to the risk of harm to plaintiff, plaintiff has not shown what harm he suffered as a result). Recent cases that have recognized a cause of action pursuant to Carlson have found a lack of new context in circumstances that included life-threatening denial of care, which has not been shown here. See, e.g., Mendoza v. Edge, 615 F. Supp. 3d 163, 171-72 (E.D.N.Y. 2022) (recognizing a claim as bearing an "extremely strong resemblance" to Carlson where defendants are alleged to have deliberately denied plaintiff care for a "condition that could have produced death, degeneration or extreme pain"); Feao v. Ponce, 2023 WL 3213553, at *13 (C.D. Cal. Mar. 3, 2023) ("long-term mismanagement of a serious condition, resulting in an inmate's death" is not "meaningfully different" from Carlson). The level of severity of Bettis' condition as well as his eventual receipt of medical care presents a context different from Carlson.

      As to whether special factors counsel hesitation against creating a new remedy, the existence of a tort remedy for deliberate indifference to medical needs under the FTCA by itself strongly counsels against the creates of a Bivens remedy. Swinton v. Serdula, 2022 WL 3701196, at *7 (W.D.N.Y. Aug. 26, 2022) (availability of FTCA remedy for plaintiff's claim of deliberate indifference to medical needs precludes the extension of a Bivens remedy); Edwards, 2022 WL 309393, at *9 ("The Court agrees with the many cases which have found the existence

FTCA to be a special factor counseling hesitation in extending Bivens;"); Huckaby v. Bradley, 2018 WL 2002790, at *6 (D.N.J. Apr. 30, 2018) ("On balance, the Court finds the availability of a remedy against the United States on a claim of negligence under the FTCA, in light of Ziglar, is a factor weighing against the Court recognizing a Bivens remedy here."). And for the reasons already described with respect to excessive force, including the concerns about deference to prison administration and separation of powers, the possible alternative pathways of the BOP's Administrative Remedy Program, and the passage of the PLRA, other special factors exist to counsel hesitation in extending a Bivens remedy. See Caraballo, 2023 WL 3467185, at *8 (citing special factors against extending Bivens in a new context to a deliberate indifference claim for prisoners in federal custody); Gonzalez v. Hasty, 269 F. Supp. 3d 45, 61-62, 65 (E.D.N.Y. 2017) (special factors against extending Bivens in a deliberate indifference case different from Carlson include the passage of the PLRA and the existence of administrative remedies), aff'd, 755 F. App'x 67 (2d Cir. 2018); see also Dean v. Robinson, 2023 WL 2028720, at *9 (W.D.N.Y. Feb. 16, 2023) ("These considerations related to the PLRA, the FTCA, and the difficulties of prison administration lead inexorably to the conclusion that it is Congress, and not this Court, that should determine whether a damages remedy is available under the circumstances presented here.") (deliberate indifference to safety claim).

    C. Cover Up and Retaliation

The complaint's allegations of a "cover up," see Comp. at 6, and its implication that the refusal of medical care was tied to a desire to punish Bettis reflects some kind of retaliation or scheme against him, see id. at 5-6, must be dismissed. None of the three Bivens contexts recognized by the Supreme Court "include retaliation," and "there are special factors that counsel against expanding a new Bivens remedy," in the availability of relief under the FTCA and the

existence of the PLRA. Ramirez v. Tatum, 2018 WL 6655600, at *5 (S.D.N.Y. Dec. 19, 2018). "As a result, there is no Bivens remedy for retaliation . . . claims." Id. Likewise, to the extent Bettis intends to state a claim related to the "cover up" of Grijalva's assault of Bettis, the "cover-up claim differs meaningfully from previous Bivens cases, making the context 'new,'" and the availability of FTCA claims and reluctance by courts "to weigh in on the internal management and operations of BOP" reflect special factors against recognizing an implied action for a "cover up." Morrison v. United States, 2019 WL 5295119, at *3 (S.D.N.Y. Oct. 18, 2019) (citations omitted).

* * *

While we have found that the complaint fails to state a claim, plaintiff is given 30 days to file an amended complaint in the event that he can cure any of the defects in the original complaint. See, e.g., Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."). We note that we have not construed plaintiff's complaint as raising any claim under the FTCA. If plaintiff has a basis for pursuing such a claim, he has leave to add such a claim to an amended complaint. We note (1) that any complaint under the FTCA must name the United States of America as a defendant; and (2) that any claim under the FTCA can only be made if plaintiff has complied with the exhaustion requirements of 28 U.S.C. § 2675(a) and must be timely filed.

Conclusion

For the foregoing reasons, defendants' motion to dismiss or, in the alternative, for summary judgment (Docket # 42) is granted. Plaintiff has leave to file an amended complaint within 30 days if he can cure the defects described herein. Otherwise, the case will be dismissed.

SO ORDERED.

Dated: June 23, 2023
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge